IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SAMANTHA C.,[1]                                    No. 6:19-cv-2036-MO

               Plaintiff,                  OPINION & ORDER

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

               Defendant.


MOSMAN, District Judge:

      This matter comes before me on Plaintiff s Samantha C.'s Complaint [ECF 1] against

Defendant Commissioner of the Social Security Administration. For the reasons given below, I

AFFIRM the Commissioner's decision and DISMISS this case.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

## PROCEDURAL BACKGROUND

On June 16, 2016, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and on January 30, 2017, applied for Supplemental Security Income ("SSI") under Title XVI, with an amended alleged onset date of May 20, 2016. Tr. 15. The Social Security Administration ("SSA") denied her claim initially and upon reconsideration. Tr. 70, 86. Plaintiff appeared and testified at a hearing before Administrative Law Judge (ALJ) B. Hobbs on September 16, 2018. Tr. 34-69. On December 7, 2018, the ALJ issued a decision finding that Plaintiff had not been under a disability at any time from the alleged onset date through the date of the decision. Tr. 12-33. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 3-8.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff engaged in substantial gainful activity (SGA) from July to December, 2016, and in March and May 2018, but that there was no continuous period of at least 12 months of SGA during the relevant period. Tr. 18. At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, anxiety, and bipolar disorder. Tr. 18. At step three, the ALJ found no impairment that met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations. The claimant can lift/carry 10 pounds frequently, 20 pounds occasionally, and push/pull within these limits. She can sit about six hours and stand/walk about four hours during an eight-hour day. The claimant can sit for one hour at a time, but then will need to stand or walk for no more than one minute before resuming a seated position. The claimant can only occasionally crawl, stoop, crouch, kneel, and never climb ladders, ropes, or scaffolds. The claimant can understand, remember, and carry out only short and simple instructions and make only simple work-related judgments and decisions.

Tr. 20.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 25. At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform such as electronic worker; electrical accessories assembler; and small parts assembler. Tr. 26. The ALJ therefore found Plaintiff not disabled. Tr. 27.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises three issues with the ALJ's decision. She argues the ALJ erred by (1) erroneously discounting her subjective symptom testimony, (2) improperly rejecting the opinions of the treating and consulting doctors, and (3) failing to meet his burden at step five. I address these issues in turn.

## I.    Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom

evaluation. *Molina v. Astrue*, 674 F.3d 114, 1112 (9th Cir. 2012) (superseded on other grounds).

First, the ALJ determines whether there is "objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged."

*Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there

is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in

order to reject the claimant's testimony about the severity of the symptoms." *Id.*

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient."

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "An ALJ does not provide specific, clear,

and convincing reasons for rejecting a claimant's testimony by simply reciting the medical

evidence in support of his or her residual functional capacity determination." *Brown-Hunter v.*

*Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the

testimony she or he finds not to be credible and must explain what evidence undermines the

testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50

F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the

reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the hearing, Plaintiff testified about her part-time work and how she takes more breaks

than others. Tr. 53. During those breaks, colleagues cover for her while she walks around or does

what she needs to recover. Tr. 53. She testified that she can sometimes get muscle spasms, and

that her muscle spasms, pain and anxiety have occasionally caused her to miss work altogether.

Tr. 43, 55. When asked if she could perform more hours of work than her current two shifts of 6

hours, she answered, "no, the only reasons I can work there is because of accommodations they

provide me." Tr. 44. When asked more generally if she could work a 40 hour work week, she

said "no" and stated "[g]etting through the actual 40 hours would be the first hurdle, but then the

recuperating – any time I work over 20 hours, if I pull an extra shift and I end up working 20 hours for the week, it takes me a full day, if not two, to recuperate from that to be able to stand upright without muscle spasms and back pain and shooting pain down my legs." Tr. 56.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 21. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 21. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with the objective medical evidence, that Plaintiff conditions improved with treatment, and that Plaintiff's daily activities conflict with the level of alleged disability in her testimony. Tr. 21-23.

*A. Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)(emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). The absence of corroborating objective medical evidence is not enough, on its own, however, to reject a claimant's symptom testimony. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 16-3p, 2017 WL 5180304, at *5; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ erred by citing purportedly conflicting medical records to discount Plaintiff's subjective symptom testimony about her back pain. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). At the hearing, Plaintiff shared that back pain and muscle spasms that shoot down her legs prevent her from working a full-time schedule. Tr. 56. Plaintiff did not suggest these symptoms limited her strength or hampered her gait, but that the pain and spasms increase with activity, and that she needs significant recuperation after exertion. Tr. 56. The ALJ concluded that Plaintiff's testimony did not line up with objective medical evidence showing Plaintiff's normal leg strength and walking ability. Tr. 22. For example, The ALJ noted that Plaintiff generally demonstrated normal gait/station, 5/5 strength, and no evidence of muscle atrophy. Tr. 22 (citing Tr. 511-14, 607-08, 613-15). But the medical records the ALJ cited did not actually conflict with Plaintiff's testimony. To begin with, several of the medical records the ALJ cited support Plaintiff's testimony, rather than undermine it. *See, e.g.,* Tr. 511-514 (noting that, instead of having "normal gait," Plaintiff "needed to have a hand on the exam table" while walking on her own). Nor did the ALJ point to any medical records where Plaintiff reported "no" or "little" pain. *See* Tr. 22-23. By highlighting only general markers of Plaintiff's strength and normal gait (which were not borne out by the ALJ's citations), the ALJ failed to identify any objective medical evidence that actually conflicted with any of Plaintiff's hearing testimony. Tr. 22. This was therefore not a clear and convincing reason to discount Plaintiff's subjective symptom testimony concerning the extent of her back pain or muscle spasms.[2]

---

[2] The ALJ did not harmfully err, however, because he identified two other sufficient bases to discount Plaintiff's subjective symptom testimony. *See Molina*, 674 F.3d at 1115 (holding ALJ's error "harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

*B. Improvement with Treatment*

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Additionally, an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ discounted Plaintiff's testimony about her mental and physical health because those conditions improved with treatment over time.

The ALJ reasonably concluded that Plaintiff's physical symptoms improved with treatment, which undermined her hearing testimony about the extent of her back pain. The effectiveness of treatment is relevant to the evaluation of a person's alleged symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). For instance, in this case, Plaintiff claimed she could not work, in part, because of back pain. Tr. 43, 56. However, Plaintiff's treatment records showed her symptoms improved with injections, acupuncture, and physical therapy. Tr. 525, 528, 535, 554, 565, 587, 953. Indeed, Plaintiff's doctors recommended that she increase her activity level, such as walking, cycling, or swimming. Tr. 591, 609. In September 2016, Plaintiff reported that her pain was manageable. Tr. 582. And by mid-2017, Plaintiff reported increasing her activity to include stretching, riding a bike, and going to the gym. Tr. 692, 704. Thereafter, she reported doing "a lot better," and having a 60% to 75% improvement in symptoms. Tr. 711,

713, 715, 724, 731, 776, 791, 816. In January, 2018, she reported that she was doing well, her

pain was managed, and she was looking for part-time work. Tr. 799. These all amount to a clear

and convincing reason, supported by substantial evidence to discount Plaintiff's symptom

testimony about her back pain.

The ALJ also reasonably concluded that Plaintiff's mental health symptoms improved

with treatment, which undermined her hearing testimony. Although Plaintiff complained of

symptoms associated with her bipolar disorder and anxiety, Tr. 53-56, the ALJ noted that

Plaintiff treated these symptoms effectively with medications and regular treatment. Tr. 23. As a

starting point, in August 2016 Plaintiff reported her depression was a 4/10. Tr. 573. The ALJ

identified that, after that, Plaintiff reported that her symptoms improved with counseling and

medication (Tr. 673, 675, 691, 767, 921, 929, 942), and she demonstrated normal mood and

affect (Tr. 644, 661, 692, 700, 713, 720, 729, 737, 744, 751). Highlighting Plaintiff's progress,

the ALJ noted that by January, 2018, chart notes showed Plaintiff "functioning well in life," and

that by March 2018, Plaintiff "seem[ed] stable and happy," and was "developing awareness of

patterns that support well-being." Tr. 914, 922. This is a clear and convincing reason, supported

by substantial evidence to discount Plaintiff's symptom testimony.

*C. Daily Activities & Work History*

The ALJ also discounted Plaintiff's subjective symptom testimony about her back pain

because it was inconsistent with her daily activities and work history. Tr. 23. Activities of daily

living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as

evidence a claimant can work if the activities "meet the threshold for transferable work skills";

or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625,

639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily

activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). An ALJ can also consider "any work activity, including part-time work, in determining whether a claimant is disabled." *Ford*, 950 F.3d at 1156 (citing *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992)). The ALJ found Plaintiff's ability to work part-time, travel, and do activities like camping and hiking belied her testimony of disabling back pain. Tr. 23.

Several of the activities the ALJ listed undermine Plaintiff's testimony about disabling back pain and muscle spasms. To discount a Plaintiff's testimony, and ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The ALJ cited Plaintiff's ability to work off and on throughout the period of alleged disability. Tr. 831, 863, 871, 917, 918, 923, 926, 931. At times, she worked six- and eight-hour shifts. Tr. 897, 918. Also, despite alleging to suffer from disabling back pain, she reported camping, hiking, joining a gym, and flying to visit family. Tr. 574, 695, 704, 716, 725, 732, 739, 747, 754, 769, 777, 784, 918, 947, 950, 951, 952. It was reasonable for the ALJ to contrast these activities with Plaintiff's hearing testimony about back pain and muscle spasms, and the time she needed to recover from those symptoms.

Plaintiff argues her daily activities and work history do not directly undermine her symptom testimony because they do not indicate an ability to sustain a full-time job on a continuing basis. *See* Pl. Reply, ECF No. 22 at 13. Plaintiff also contends that the ALJ erred by analyzing her testimony at too high a level of generality. *Id.* As Plaintiff points out, the Ninth Circuit requires an ALJ to "specifically identify the testimony from a claimant she or he finds not

to be credible and explain what evidence undermines the testimony." Pl. Reply at 12 (citing *Treichler v. Commissioner*, 775 F.3d 1090, 1102 (9th Cir. 2014). The ALJ did not err on either account. First, Plaintiff offers her competing—and plausible—interpretation of the evidence that her part-time work history should not undermine the testimony that she cannot sustain full-time employment. Pl. Reply at 13. But the ALJ's interpretation of the evidence—that an ability to work 8-hour days for weeks at a time undermines testimony of disabling back pain—is plausible as well. Tr. 897-98. And where the ALJ's interpretation of the evidence is reasonable and supported by substantial evidence, the Court may not second-guess it, even if the ALJ's interpretation is not the only reasonable one. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Second, the ALJ's analysis was sufficiently specific. The ALJ directly called out Plaintiff's symptom testimony about the extent of her physical limitations, and juxtaposed that testimony to Plaintiff's work history and other daily activities. Tr. 22. Because the ALJ provided a reasonable interpretation of the evidence, and was sufficiently specific in doing so, the Court finds he did not err in discounting Plaintiff's subjective symptom testimony on this basis either.

## II.    Medical Opinion Evidence

An ALJ must consider, evaluate, and explain the weight he gave the opinions of medical professionals who saw the claimant or reviewed her records in a professional capacity. 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 416.927(b), (d) & (e); SSR 6-03p, available at 2006 WL 2329939. For claims like this one filed before March 17, 2017, the Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester*, 81 F.3d at 830.

To reject a contradicted treating doctor's opinion, the ALJ must present "specific, legitimate reasons" for doing so. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). When there is a conflict between medical opinions, the ALJ must provide a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation of the evidence, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Id.* at 1040. The opinion of a non-examining physician cannot by itself constitute substantial evidence to reject the opinion of a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830-1 (9th Cir. 1995). Such opinions are substantial evidence only if they are consistent with other evidence in the record which contradicts the treating or examining medical opinion at issue. *Morgan v. Comm'r of. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted).

    *A. Dr. Katherine Merkle, D.O., John Ward, M.D.*

At the heart of the parties' dispute over treating Doctors Katherine A. Merkle, D.O. and John Ward, M.D., is a Work Performance Evaluation (WPE) administered by Registered Occupational Therapist Diane Barker that both treating physicians reviewed. Dr. Merkle is one of Plaintiff's treating physicians and saw her for Osteopathic Manipulative Treatment (OMT) for Plaintiff's chronic low back pain with radiculopathy at least monthly since June of 2017. Tr. 626-35. Dr. Merkle reviewed the WPE, and agreed with the limitations it identified, including a limitation to sedentary work with brief periods of walking or standing, a maximum tolerance of a 5-6 hour work day and a 25-30 hour work week. Tr. 626-27, 962. On July 19, 2018, Plaintiff's long-time treating physician Dr. John Ward, M.D. also reviewed the WPE, and a likewise agreed

with its recommendations that Plaintiff be limited to sedentary work, a 5-6 hour work day, and a
25-30 hour work week. Tr. 638.

The ALJ gave treating physicians Dr. Merkle and Dr. Ward's opinions "little weight." Tr.
24. For both, the ALJ concluded they deserved little weight because they conflict with the
objective medical evidence, the history of Plaintiff's improvement with treatment, and Plaintiff's
"activities during the adjudicatory period, including significant work activities." Tr. 24.

The ALJ adequately supported his rejection of Doctors Merkle and Ward's opinions with
substantial evidence that the impairments they adopted from the WPE do not match up with
evidence of Plaintiff's improvement with treatment, daily activities or work history. As noted
above, discrepancy between objective examination findings and doctor's conclusion is a "clear
and convincing reason" to discount a treating physician's medical opinion. *Bayliss*, 427 F.3d
1216; *see also Montavono v. Berryhill*, 2018 WL 1069464, at *7 (D. Or. Feb. 26, 2018).
Likewise, inconsistency between a medical source opinion and a claimant's reported activities is
a valid reason to reject it. *Ghanim,* 763 F.3d at 1162 (citing *Morgan*, 169 F.3d at 600-02). As
discussed above concerning Plaintiff's subjective symptom testimony, the ALJ reasonably
contrasted the opinions that Plaintiff could only work part-time with evidence that Plaintiff's
back pain had improved significantly with treatment. Tr. 525, 528, 535, 554, 565, 587, 953. The
ALJ also reasonably rejected the doctors' opinions that Plaintiff was limited to working a
maximum six-hour shift (Tr. 626), when the record showed she worked off and on throughout
the relevant period and managed to work eight-hour shifts as a receptionist in February 2018. Tr.
897, 918. The ALJ also noted the tension between Plaintiff's daily activities like camping,
hiking, joining a gym, and travelling and the conclusion that she was unable to work more than
25-30 hours a week. *See* Tr. 574, 695, 704, 716, 725, 732, 739, 747, 754, 769, 777, 784, 918,

947, 950, 951, 952. Taken together, these contradictions provide substantial evidence to support the ALJ's conclusion that Doctors Merkle and Ward's opinions that Plaintiff was limited to a 5-6 hour work day and a 25-30 hour work deserved "little weight."

Plaintiff argues the ALJ's conclusion lacks specificity[3] and that the record weighs more heavily in favor of Doctors Merkle and Ward.[4]. Plaintiff specifically highlights evidence of Plaintiff's muscle spasms, decreased range of motion, tenderness, and sensory deficits—and provides an alternative interpretation of how those symptoms affect her ability to work. Pl Br., ECF No. 16 at 7-10, 12. But it is not this Court's job to consider afresh how much weight each individual piece of medical evidence ought to have. Instead, the Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ"). Even when there are two reasonable interpretations—Plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

---

[3] For the same reasons discussed above concerning the specificity of the ALJ's decision on Plaintiff's subjective symptom testimony, the opinion is sufficiently specific. *Brown-Hunter*, 806 F.3d at 492 (requiring "the agency set forth the reasoning behind its decisions in a way that allows for meaningful review").

[4] Plaintiff also argues the ALJ erred throughout by failing to discuss all the factors about the reliability of medical opinions found in 20 C.F.R. 404.1527(c). Pl. Br., ECF No. 16 at 16. The regulations do not require the ALJ to *discuss* the factors explicitly in the opinion, but only to consider them. *Kelly v. Berryhill*, 732 F. App'x 558, 562, n.4 (9th Cir. 2018); *see also* 20 C.F.R. § 404.1527(c). Contrary to Plaintiff's assertion, the ALJ did consider the § 404.1527(c) factors that were relevant to the medical opinions, and discussed them in depth: in particular their consistency and supportability. *See* Tr. 23-25. This satisfied the ALJ's obligation under 20 C.F.R. 404.1527(c).

2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Against that backdrop, even though Plaintiff clearly interprets the evidence differently, she has not (and cannot) establish error by simply advancing a different interpretation of the weight that ought to be afforded certain evidence. The ALJ sufficiently supported his decision to offer Doctors Merkle and Ward's opinions "little weight," and did not err.

   *B. K. McAuliffe, M.D.*

   On November 17, 2017, Dr. K. McAuliffe, M.D., reviewed Plaintiff's medical records for the State of Oregon's Vocational Rehabilitation Division. Based on a review of the records, Dr. McAuliffe stated that Plaintiff's prognosis was guarded, and she has chronic mental and physical health symptoms with permanent restrictions, neither of which is stable. Tr. 636. With respect to sitting, walking, and standing, Dr. McAuliffe opined that Plaintiff should "[a]void prolonged positions and repetitive movements; vary tasks." Tr. 636. He then went on to summarize Plaintiff's allegations ("She reported 1 [hour] of standing/walking and sitting in a 6 [hour] day") and the limitations assessed on the physical consultative examination ("PCE reported sedentary work with walking 'frequently' (1/3-2/3) of the day and sitting or standing up to 1/3 of the day"). Tr. 636.

   The ALJ gave Dr. McAuliffe's opinion "great weight," despite acknowledging that it was "somewhat vague." Tr. 24. The ALJ did so because the opinion was "generally consistent with the claimant's treatment history, which as discussed above supports that the claimant has experienced significant improvement in symptoms with various treatments and also supports that her symptoms have not been as limiting as alleged." Tr. 24. Plaintiff argues the ALJ erred by failing to incorporate all aspects of Dr. McAuliffe's opinion, in particular the statements that "per

psychology consultant…[she] is expected to miss 3 days a month per the intake," and that she would have "difficulty with sustained productive work." Pl. Br at 7 (citing Tr. 636). Plaintiff believes that if the ALJ gave the whole opinion "great weight," that these portions support her allegation of disability.

The ALJ did not err in his assessment of Dr. McAuliffe's vague opinion. "The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041-42. Here, the ALJ noted that Dr. McAuliffe's opinion was "somewhat vague," to the extent it contained both Dr. McAuliffe's own opinions in the "prognosis" section, and included other doctors' opined limitations without specifying whether those opinions were incorporated. *See* Tr. 636 (noting expectation of Plaintiff missing work 3 days a month was "per psychology consultant" and "per the intake"). The ALJ interpreted Dr. McAuliffe's opinion as rejecting these limitations, as it found her "able to work," and "looking for increased hours." Tr. 24, 636-37. Plaintiff reads Dr. McAuliffe's opinion differently, and believes it was error for the ALJ to characterize Dr. McAuliffe as rejecting the psychology consultant's forecast that Plaintiff would miss at least 3 days of work a month. Pl. Br. at 15. But since Plaintiff is not the "final arbiter" of ambiguity in the medical record like the ALJ, the Court upholds the ALJ's reasonable reading of an admittedly vague medical opinion. Because the ALJ met his obligation to resolve ambiguities in the medical record and otherwise reasonably considered Dr. McAuliffe's opinion, the ALJ did not err.

*C. Karsten Johnson, D.O., Jaqueline Farwell, M.D., and Neal Berner, M.D.*

Dr. Johnson examined Plaintiff in 2016 and concluded she was limited in crawling, crouching, standing for more than 1 hour at a time, walking over uneven ground, bending to pick up over five pounds, running, carrying over 25 pounds, but with no limitations in sitting, or fine

motor control. Tr. 515. Dr. Farwell, a state agency medical consultant, reviewed the record later in 2016 and concluded Plaintiff could do light work, stand for four hours, sit for about six hours in an eight-hour workday, occasionally climb, stoop, kneel, crouch, and crawl, and would need to avoid concentrated exposure to vibration and hazards. Tr. 79-80. Dr. Berner reviewed the record in 2017 and concurred with Dr. Farwell's assessment. Tr. 100-01.

The ALJ gave these opinions "great weight," finding them consistent with objective findings, with claimant's treatment history documenting significantly improved symptoms with various treatments, and with the claimant's reported activities. Tr. 24. Plaintiff argues the ALJ erred by failing to consider Plaintiff's inability to sustain full-time work, and because these three opinions were all out of date. Pl. Br. at 15-16.

These opinions served as substantial evidence in support of the ALJ's decision, and the ALJ considered the appropriate factors when analyzing them. The opinions of state agency medical consultants, like Drs. Farwell and Berner, may constitute substantial evidence as long as other evidence supports their findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Further, the opinion of an examining doctor like Dr. Johnson may serve as substantial evidence supporting the ALJ's findings with respect to the claimant's limitations because it rests on the doctor's own independent examination of the claimant. *Id.* The ALJ reasonably identified support for these opinions in the objective medical evidence—which Plaintiff does not contest— and did not err in relying on these opinions because they were relatively older than others in the record. These opinions all fall within the relevant period after Plaintiff's alleged disability began, and Social Security regulations do not suggest an otherwise well-supported opinion should be discounted just because it is from early in the relevant period. 20 C.F.R. §§ 404.1527(c),

416.927(c). Accordingly, the ALJ did not err in deciding to give these medical opinions great weight.

 *D. Frank G. Lahman, Ph.D.*

 In March of 2017, Dr. Frank G. Lahman, Ph. D. performed a psychological evaluation for the Agency. Tr. 619. He reviewed medical records, interviewed Plaintiff and performed a mental status examination, which included the Montreal Cognitive Assessment. Tr. 619-620. He observed she was distressed at various points of the interview. Tr. 620. He noted that, among other medications, she takes Lamictal, clonidine and Latuda. He interviewed her and found Plaintiff tested within normal limits and showed no areas of significant difficulty. Tr. 619-22. Nevertheless, Dr. Lahman concluded that Plaintiff's mental status was "fragile," subject to "easily deteriorating with increased demands that I would associate with full-time employment." Tr. 622.

 The ALJ gave "little weight" to "Dr. Lahman's opinion that the claimant's status was 'fragile' and that she is likely to deteriorate" as it is "inconsistent with the claimant's progress as documented in her counseling records, and inconsistent with her activities, as discussed above." Tr. 23. Plaintiff argues the ALJ erred in doing so because he did not identify substantial evidence showing Dr. Lahman's opinion lacked support.

 The ALJ reasonably discounted Dr. Lahman's opinion because it was not well supported by the objective medical evidence and conflicted with Plaintiff's activities and work history. Tr. 23. The ALJ may discount an opinion that is not well supported by medical signs and laboratory findings. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). In this case, other than performing the Montreal Cognitive Assessment, which showed Plaintiff was normal, Dr. Lahman did not perform any other formal testing. Tr. 619-23. And contrary Dr. Lahman's opinion that Plaintiff

would deteriorate with the demands of full-time work, other treatment notes showed that Plaintiff worked off and on and could, in fact, tolerate working six- and eight-hour shifts. Tr. 831, 863, 871, 897, 917-18, 923, 926, 931. The ALJ further found that Plaintiff's activities such as camping, hiking, and going to the gym undermined Dr. Lahman's conclusion. Tr. 23. In sum, the ALJ reasonably supported his decision to give Dr. Lahman's opinion about Plaintiff's likelihood to deteriorate mentally little weight, and Plaintiff does not identify any other error in the ALJ's consideration of his opinion.

## III.    Step Five

At step five, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that the claimant can perform despite [her] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); 20 C.F.R § 416.920(g). In making this determination, the ALJ relies on the Dictionary of Occupational Titles (DOT), which is the Social Security Administration's "primary source[ ] of reliable job information" regarding jobs that exist in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R §§ 416.969, 416.966(d)(1). The ALJ relies on the testimony of a vocational expert (VE) to identify specific occupations that a claimant can perform considering her RFC. 20 C.F.R § 416.966(e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). Plaintiff argues the ALJ erred at step five because he did not address Plaintiff's testimony or the discounted medical opinions about her inability to sustain full-time work. Pl. Reply, ECF No. 22 at 15-16.

The ALJ did not err at step five. Plaintiff's step five argument recapitulates her earlier two, that the ALJ erred by improperly discounting her symptom testimony and certain medical evidence. Since the ALJ reasonably discounted portions of Plaintiff's symptom testimony and

unsupported medical opinions, the Court rejects Plaintiff's invitation to reconsider the issue. *See Stubbs-Danielson*, 539 F.3d at 1175–76 (rejecting a step five argument that "simply restates" arguments about medical evidence and testimony); *see also Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) (acknowledging there is no requirement that testimony for which the ALJ has provided specific and legitimate reasons to discount be included in the hypothetical given the VE). The Court finds the ALJ did not commit any error at step five.

**CONCLUSION**

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case.

IT IS SO ORDERED.

DATED:____1/3/2024_____.

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge